**UNITED STATES of America,**
**Plaintiff,**

v.

**Jerald Vincent PROELL, Defendant.**

**No. C1–05–082.**

United States District Court,
D. North Dakota,
Southwestern Division.

Nov. 7, 2005.

Scott J. Schneider, U.S. Attorneys, Bismarck, ND, for Plaintiff.

Ralph A. Vinje, Vinje Law Firm, Bismarck, ND, for Defendant.

---

### ORDER DENYING DEFENDANT'S MOTION TO SUPPRESS EVIDENCE

HOVLAND, Chief Judge.

Before the Court is the Defendant's Motion to Suppress Evidence filed on October 17, 2005. The Government has filed a response opposing the motion. On November 3, 2005, the Court held an evidentiary hearing. For the following reasons, the motion is denied.

### I. *BACKGROUND*

On April 6, 2005, Judge Bruce A. Romanick of the South Central Judicial District in the State of North Dakota issued a search warrant which read in relevant part as follows:

> Sworn testimony having been presented to me by Warden Ken Skuza and Lt. Sonny Brunsell that they has [sic] reason to believe that there is evidence at the structure(s), known as 79 4th Ave. SW and 78 3rd Ave. SW, Garrison, ND, including a shop, houses, other structures, and the open fields within the curtilage, namely: **Untagged deer heads, antlers, or other deer body parts, pictures of illegally taken deer, a 30.06 rifle and 30.06 ammunition,** a .243 rifle and ammunition which constitutes evidence of a criminal offense in violation of NDCC chapter 20.1 and as I am satisfied that there is probable cause to believe that the property so described can be found at this address.

Government's Ex. B (emphasis in original).

At a hearing on the warrant, Lieutenant Sonny Brunsell of the McLean County Sheriff's Department testified about information provided by an individual named Dusty Schneider in an interview conducted on April 3, 2005. *See* Government's Ex. C. During the interview, Schneider told law enforcement officers that Bryant Huston admitted to illegally killing seven deer near Duane Roll's residence in Garrison, North Dakota.[1] Huston's conduct took place from January 10, 2005 (the end of deer season) through the end of February 2005. An attic in the garage area of the Roll residence was used to butcher the illegally killed animals and store deer heads, antlers, and other deer parts. *Id.* at 5. Huston used a 30.06 rifle and a .243 rifle to illegally take the deer. *Id.* at 20.

Game Warden Ken Skuza testified about reports of "shining"[2] on the part of Bryant Huston, Dusty Schneider, and an individual named Eric Dehaven. Reports of this activity were received by Warden Skuza in October and December of 2004.

The testimony established that Huston resides with his mother, Leslie Huston, at 78 3rd Avenue SW in Garrison, North Dakota. In close proximity to the Huston residence is the residence of the defendant, Jerald Proell, located at 79 4th Avenue SW. Next to the Proell residence is a building, out of which a business known as "Al's Repair" is operated. Lieutenant Brunsell reasonably believed that Huston had access to the Huston residence, the Proell residence, and Al's Repair. Lt. Brunsell testified as to why he believed evidence would be located at each:

> Q: We don't know exactly where Mr. Huston is storing his weapons, either. We know—first of all, do we know or do you have reason to believe, based on the information you have given the Court, that the Roll residence is part of this poaching operation?

---

1. Roll resides at 1430 A 67th Avenue NW in Garrison, North Dakota.

2. Warden Skuza explained that "[s]hining is the use of artificial light after or before sunrise" for the purpose of killing wildlife. Government's Ex. C, p. 16.

A: Yes.

Q: And we—and you have reason to believe that Mr. Huston has access to the areas in Garrison on the other search warrant?

A: Yes

Q: Would it be your experience based on the evidence of the poaching operation, and plus where Mr. Huston resides, is that where we're going to find the weapon and ammunition?

A: Yes.

Q: From the killings?

A: Yes.

Government's Ex. C, pp. 20–21.[3] Warden Skuza explained that poachers often process the animals in one location and remnants such as wall mounts end up in other residence areas. *Id.* at 22 and 23.

The search of the Huston residence located at 78 3rd Avenue SW in Garrison, North Dakota, revealed deer antlers, eagle talons and a rifle. The search of the Proell residence located at 79 4th Avenue SW in Garrison, North Dakota, revealed drug paraphernalia and the firearms identified in the Indictment. It is unclear whether these items were located at the Proell residence or at Al's Repair. The Beretta pistol was found in a safe along with a bag of marijuana and $2,000. Upon discovery, the search was stopped and an additional warrant was sought.

Later, on April 6, 2005, Judge Romanick issued a second warrant which read as follows:

Sworn testimony having been presented to me by Dep. Bryan Lang that he has reason to believe that there is evidence at the structure(s), known as 79 4th Ave. SW and 78 3rd Ave. SW, Garrison, ND, including a shop, houses, other structures, and the open fields within the curtilage, namely: **Marijuana, metham-phetamine, drug paraphernalia, and indicia, records, proceeds of drug transactions; Sten machine gun, 9mm with no serial number; Colt AR15 bearing serial GC018285; SKS bearing serial number S1307122000; 22 Cal Berreta pistol bearing serial number BER40387T; 243 Cal Browning A bolt rifle bearing serial number 87552NW817** which constitutes evidence of a criminal offense in violation of NDCC chapter 19–03.1 and title 62.1 as I am satisfied that there is probable cause to believe that the property so described can be found at this address.

Government's Ex. A (emphasis in original).

In the present motion, the Defendant challenges the search conducted at 79 4th Avenue SW in Garrison, North Dakota, based on a lack of probable cause, due in part on alleged false statements or misleading information provided to Judge Romanick.

## II. LEGAL DISCUSSION

### A. PROBABLE CAUSE

The Fourth Amendment secures the persons, houses, papers, and effects of the people against unreasonable searches and seizures by the government. The general rule is that the government must secure a warrant before conducting a search. *United States v. Alberts*, 721 F.2d 636, 638 (8th Cir.1983). "The Fourth Amendment requires a showing of probable cause to support a search warrant." *United States v. Gabrio*, 295 F.3d 880, 882 (8th Cir.2002). "The court issuing a search warrant must 'make a practical commonsense decision whether, given all the circumstances set forth in the affidavit before him, including the 'veracity' and 'basis of knowledge' of persons supplying hearsay information,

---

**3.** Lieutenant Brunsell also testified that in his experience hunters will keep firearms in close proximity to their residence. *See* Government's Ex. C, pp. 13 and 14.

there is a fair probability that contraband or evidence of a crime will be found in a particular place.' " *United States v. Carter*, 413 F.3d 712, 714 (8th Cir.2005) (citing *Illinois v. Gates*, 462 U.S. 213, 238, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983)); *see United States v. Williams*, 10 F.3d 590, 593 (8th Cir.1993) (citing *United States v. Ventresca*, 380 U.S. 102, 109, 85 S.Ct. 741, 13 L.Ed.2d 684 (1965)) ("Applications and affidavits for issuance of a warrant should be examined under a common sense approach and not in a hypertechnical fashion."). "The affidavit cannot be attacked paragraph by paragraph; it must be evaluated as a whole." *United States v. Anderson*, 933 F.2d 612, 614 (8th Cir.1991). When reviewing the sufficiency of an affidavit supporting a search warrant, it is well-established that considerable deference is accorded to the issuing judicial officer. *See United States v. Fulgham*, 143 F.3d 399, 401 (8th Cir.1998); *see also United States v. Oropesa*, 316 F.3d 762, 766 (8th Cir.2003) (citing *Illinois v. Gates*, 462 U.S. 213, 236, 238–38, 103 S.Ct. 2317, 76 L.Ed.2d 527).

■ Based on a careful review of the entire record, and specifically the information provided to Judge Romanick, combined with the considerable deference given to Judge Romanick's findings and decision, the Court finds that probable cause existed to support the issuance of both search warrants on April 6, 2005. Judge Romanick was presented with substantial evidence suggesting that Bryant Huston was involved in criminal activity, the fruits of which were probably located at one or all of the locations identified in the first search warrant. The testimony of Lieutenant Brunsell and Warden Skuza established that poachers commonly store criminal evidence, to include guns and skulls, at places outside of where the animals are initially butchered, that being the Roll residence in this case. The testimony also established that Huston had access to 78 3rd Avenue SW in Garrison, North Dakota, as well as the residence located at 79 4th Avenue SW in Garrison.[4] The testimony of Lieutenant Brunsell and Warden Skuza further established that a fair probability existed that contraband or evidence of a crime would be found at 78 3rd Avenue SW *and* 79 4th Avenue SW in Garrison, North Dakota. There was a substantial basis in the record for the issuing judicial officer (Judge Romanick) to find probable cause under the circumstances.

## B. *FRANKS CHALLENGE*

In *Franks v. Delaware*, 438 U.S. 154, 155–156, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978), the United States Supreme Court held that the Fourth Amendment entitles a defendant to an evidentiary hearing about the veracity of a search warrant affidavit if the defendant can make a "substantial preliminary showing" that the affiant intentionally or recklessly included a false statement in the affidavit. *See United States v. Mathison* 157 F.3d 541, 547–548 (8th Cir. 1998). To warrant a *Franks* hearing, the allegedly false statements must be "necessary to the finding of probable cause." *Franks*, 438 U.S. at 156, 98 S.Ct. 2674. *See United States v. Gleich*, 397 F.3d 608, 613 (8th Cir.2005).

To prevail on a *Franks* challenge to a warrant, a defendant must first demonstrate that the law enforcement official deliberately or recklessly included a false statement or omitted a truthful

---

4. Bryant Huston is the son of Leslie Huston and resides at 78 3rd Avenue SW in Garrison. The defendant, Jerald Proell, resides at 79 4th Avenue SW in Garrison and has dated Leslie Huston for more than 16 years. Proell testified that he considers the Huston boys, ages 18 and 16, to be his own.

statement from his warrant affidavit. *United States v. Coleman,* 349 F.3d 1077, 1083 (8th Cir.2003). "Mere negligence on the part of law enforcement officers" does not satisfy this initial requirement. *United States v. Gibson,* 123 F.3d 1121, 1124 (8th Cir.1997). Second, a defendant must show that if the offensive content in the warrant affidavit is ignored, its remaining content "would be insufficient to establish probable cause." *Coleman,* 349 F.3d at 1083.

*United States v. Carpenter,* 422 F.3d 738, 745 (8th Cir.2005).

■ The *Franks* challenge in this case is predicated upon the following testimony of Lieutenant Brunsell in response to questioning by the McLean County State's Attorney:

Q: And, let's see. Where does Mr. Huston actually reside.

A: He resides with his mother, Leslie Huston. That would be at 78 Third Avenue Southwest, Garrison.

Q: On that particular warrant you put two different addresses. Why did you do that?

A: In regards to the locations that these boys have access to.

Q: Does Mr. Huston live there? Why don't you tell the Court about that. I mean, why don't you tell the Court about the physical makeup of those two addresses. I mean, it looks like two different places. Is it two different places?

A: Specifically, it does. It gets two different addresses. That's to do with the two telephone numbers that fall under the 911 system.

Q: *Physically, if you go up there, what do you see?*

A: *They are connected.*

Q: If you go up there, what do you see?

A: Coming in off 37, pull in the driveway, there is an older house that's unoccupied, plus there is a shop that Jerry Proell call Al's Repair.

Q: What address is that?

A: That one is 79 Fourth Avenue Southwest, Garrison.

Q: Then what else do you see?

A: Then directly behind that would be Leslie Houston's [sic] house.

Q: So it's all in the same—

A: Same portion of the block there.

Q: Same area?

A: Back-to-back.

Q: Just has two different 911 addresses?

A: That's right.

Government's Ex. C, pp. 6–7 (emphasis added).

At the hearing on November 3, 2005, the defendant, Jerald Proell, testified that the two houses are not physically connected as Lieutenant Brunsell seemed to initially indicate, but, in fact, are two separate buildings. For that reason, the Defendant contends that Lieutenant Brunsell deliberately or recklessly offered false or misleading statements to Judge Romanick, and without consideration of those statements there exists no probable cause to issue the first warrant on April 6, 2005.

Having carefully reviewed the entire record and considered the testimony offered at the evidentiary hearing, the Court finds that the Defendant has not met his burden under *Franks.* When Lieutenant Brunsell's testimony is read in its entirety and in context, it is clear that he understood that there were two separate buildings and he adequately conveyed that understanding to Judge Romanick during the hearing held on the search warrant on April 6, 2005. Lieutenant Brunsell also

testified at the evidentiary hearing on November 3, 2005. He said that the buildings are connected by a common boundary line, but the residences are not physically connected to each other. The Defendant offered no evidence to suggest that Lieutenant Brunsell's statements were made deliberately, recklessly, or intentionally. The Court finds that the testimony offered by Lieutenant Brunsell at the hearing before Judge Romanick, and at the evidentiary hearing on November 3, 2005, is credible and straightforward. Even assuming, arguendo, that the Defendant satisfied his initial burden under *Franks*, there was more than sufficient information presented to Judge Romanick to support a finding of probable cause even if the above-quoted portion of Lieutenant Brunsell's testimony was omitted.[5]

## III. CONCLUSION

For the reasons set forth above, the Defendant's Motion to Suppress Evidence is **DENIED** (Docket No. 19). Trial in this matter shall be scheduled for February 1, 2006, in Bismarck, North Dakota, at 9:30 a.m. A two-day trial is anticipated.

**IT IS SO ORDERED.**

[5]. The Court does not rely upon, but would add that the good faith exception to the exclusionary rule as announced in *United States v. Leon*, 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984), would likely operate in favor of the United States if suppression of the evidence was warranted.