## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Sep 30 2016, 9:02 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Mark J. Dove
Dove & Dillon, P.C.
North Vernon, Indiana

ATTORNEYS FOR APPELLEE

Gregory F. Zoeller
Attorney General of Indiana

Michael Gene Worden
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| William C. McCollum,<br>*Appellant-Defendant,*<br><br>v.<br><br>State of Indiana,<br>*Appellee-Plaintiff* | September 30, 2016<br><br>Court of Appeals Case No.<br>40A01-1604-CR-718<br><br>Interlocutory Appeal from the<br>Jennings Superior Court<br><br>The Honorable Gary L. Smith,<br>Judge<br><br>Trial Court Cause No.<br>40D01-1512-CM-555 |

**Crone, Judge.**

# Case Summary

An Indiana Department of Natural Resources ("DNR") law enforcement officer submitted an affidavit for a warrant to search William C. McCollum's residence and vehicles for evidence related to the illegal harvesting of ginseng. The judge who reviewed the affidavit found probable cause to issue a search warrant. The DNR officer and four other officers executed the warrant and found incriminating evidence in McCollum's home, and McCollum made incriminating statements at the scene. The State charged McCollum with several ginseng- and marijuana-related misdemeanors.

McCollum filed two motions to suppress the evidence obtained during the search. The trial court denied both motions. In this interlocutory appeal, McCollum claims that the trial court erred, asserting that the search warrant was invalid because the affidavit lacked sufficient indicia of probable cause, that the good-faith exception to the exclusionary rule is inapplicable, and that his statements must be suppressed under the fruit of the poisonous tree doctrine. We agree and therefore reverse and remand for further proceedings consistent with our decision.

# Facts and Procedural History[1]

[3]  In September 2015, DNR Officer Matthew Hicks submitted an affidavit for a warrant to search McCollum's North Vernon residence and vehicles for evidence related to the illegal harvesting of ginseng. The judge who reviewed the affidavit found probable cause to issue a search warrant, which Officer Hicks and four other officers executed later that day. McCollum arrived at his home with Thomas Hartwell and Robert Boyd shortly after the officers did. Officer Hicks read the search warrant to McCollum and questioned him. McCollum stated that he had driven Hartwell and Boyd to harvest ginseng and had purchased ginseng from them that he planned to sell in Bloomington. The officers found ginseng, marijuana, and paraphernalia in McCollum's residence, and McCollum showed them ginseng that he had stored in his neighbor's shed. Officer Hicks then read McCollum his *Miranda* rights while other officers handcuffed him. The record does not indicate whether the officers searched McCollum's vehicles.

[4]  In December 2015, the State charged McCollum with class B misdemeanor purchasing ginseng without a license, class B misdemeanor aiding, inducing, or

---

[1] We remind McCollum's counsel that "the statement of facts in an appellate brief should be a concise narrative of the facts stated in accordance with the standard of review appropriate to the judgment and should not be argumentative." *King v. State*, 799 N.E.2d 42, 45 n.2 (Ind. Ct. App. 2003) (citing Ind. Appellate Rule 46(A)(6)), *trans. denied* (2004), *cert. denied*. Also, we disapprove of counsel's accusation that the State has "stoop[ed]" to "desperate measures … to attempt to demonstrate the reliability and credibility of the confidential informant" mentioned in the affidavit and has "either played word games with this court or simply fabricated facts in its efforts to make an argument." Reply Br. at 10, 11. Such hyperbolic barbs have no place in an appellate brief. *Cnty. Line Towing, Inc. v. Cincinnati Ins. Co.*, 714 N.E.2d 285, 291 (Ind. Ct. App. 1999), *trans. denied* (2000).

causing harvesting of ginseng out of season,[2] class B misdemeanor possession of marijuana, and class C misdemeanor possession of paraphernalia. McCollum filed two motions to suppress the evidence obtained during the search, including the contraband and his statements. After a hearing, the trial court denied both motions. This interlocutory appeal ensued. Additional facts will be provided as necessary.

## Discussion and Decision

## Section 1 – The search warrant affidavit lacked sufficient indicia of probable cause, and therefore the warrant was invalid under the Fourth Amendment.

[5]     McCollum claims that the trial court erred in denying his motions to suppress.

> We review the denial of a motion to suppress in a manner similar to other sufficiency matters. We do not reweigh the evidence, and we consider conflicting evidence most favorable to the trial court's ruling. However, unlike the typical sufficiency of the evidence case where only the evidence favorable to the judgment is considered, we must also consider the uncontested evidence favorable to the defendant.

*Overstreet v. State*, 724 N.E.2d 661, 663 (Ind. Ct. App. 2000) (citations omitted), *trans. denied*.

---

[2] Wild ginseng may be harvested only from September 1 through December 31. Ind. Code § 14-31-3-10; 312 Ind. Admin. Code 19-1-1(9).

[6] McCollum first contends that the evidence seized during the search of his residence should be suppressed because the search warrant was invalid under the Fourth Amendment to the U.S. Constitution.[3] To generally deter law enforcement officers from violating people's Fourth Amendment rights, the U.S. Supreme Court has created the exclusionary rule, which prohibits the admission of evidence seized in violation of the Fourth Amendment. *Reinhart v. State*, 930 N.E.2d 42, 48 (Ind. Ct. App. 2010). The Fourth Amendment states,

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

The warrant requirement is a principal protection against unnecessary intrusions into private dwellings. *Chiszar v. State*, 936 N.E.2d 816, 825 (Ind. Ct. App. 2010), *trans. denied* (2011). "A defendant bears the burden of demonstrating the invalidity of a warrant." *Fry v. State*, 25 N.E.3d 237, 245 (Ind. Ct. App. 2015), *trans. denied*.

[7] More specifically, McCollum argues that the search warrant was invalid because Officer Hicks's affidavit lacked sufficient indicia of probable cause.

---

[3] McCollum does not mention or make any argument under Article 1, Section 11 of the Indiana Constitution.

"Probable cause has long been described as a fluid concept incapable of precise definition. It is to be decided based on the facts of each case." *Figert v. State*, 686 N.E.2d 827, 830 (Ind. 1997). "The level of proof necessary to establish probable cause is less than that necessary to establish guilt beyond a reasonable doubt." *Jellison v. State*, 656 N.E.2d 532, 534 (Ind. Ct. App. 1995). "Probable cause means a probability of criminal activity, not a prima facie showing." *Fry*, 25 N.E.3d at 244.

[8] The Indiana Supreme Court has stated,

> In deciding whether to issue a search warrant, "[t]he task of the issuing magistrate is simply to make a practical, commonsense decision whether, given all the circumstances set forth in the affidavit … there is a fair probability that contraband or evidence of a crime will be found in a particular place."

*Jaggers v. State*, 687 N.E.2d 180, 181 (Ind. 1997) (quoting *Illinois v. Gates*, 462 U.S. 213, 238 (1983)). "The duty of the reviewing court is to determine whether the magistrate had a 'substantial basis' for concluding that probable cause existed." *Id*. (citing *Gates*, 462 U.S. at 238-39). "'[S]ubstantial basis requires the reviewing court, with significant deference to the magistrate's determination, to focus on whether reasonable inferences drawn from the totality of the evidence support the determination' of probable cause." *Id*. at 181-82 (quoting *Houser v. State*, 678 N.E.2d 95, 99 (Ind. 1997)). "'Reviewing court' for these purposes includes both the trial court ruling on a motion to suppress and an appellate court reviewing that decision." *Id*. at 182. We review the trial court's substantial basis determination de novo. *State v. Spillers*,

847 N.E.2d 949, 953 (Ind. 2006). We consider only the evidence presented to the issuing magistrate – in this case, Officer Hicks's affidavit – and not post hoc justifications for the search. *Jaggers*, 687 N.E.2d at 182; *see also Flaherty v. State*, 443 N.E.2d 340, 343 (Ind. Ct. App. 1982) ("The issue … is whether the affidavit itself, without additional information or testimony presented after the search warrant is executed, alleges sufficient facts upon which the issuing authority could have made an independent determination of probable cause.").

[9] "[P]robable cause may be established by evidence that would not be admissible at trial." *Jellison*, 656 N.E.2d at 534. Such evidence may include hearsay, which is an out-of-court statement offered to prove the truth of the matter asserted. Ind. Evidence Rule 801(c). Hearsay is inadmissible unless the Evidence Rules or other law provides otherwise. Ind. Evidence Rule 802. Indiana Code Section 35-33-5-2(a) provides that a search warrant affidavit must particularly describe "the house or place to be searched and the things to be searched for," allege "substantially the offense in relation thereto and that the affiant believes and has good cause to believe that … the things sought are concealed there[,]" and set "forth the facts known to the affiant through personal knowledge or based on hearsay, constituting the probable cause." The statute further provides,

> When based on hearsay, the affidavit must either:
>
> (1) contain reliable information establishing the credibility of the source and of each of the declarants of the hearsay and establishing that there is a factual basis for the information furnished; or

(2) contain information that establishes that the totality of the circumstances corroborates the hearsay.

Ind. Code § 35-33-5-2(b).  In *Gates*, the U.S. Supreme Court

> indicated that the trustworthiness of hearsay for purposes of proving probable cause can be established in a number of ways, including where (1) the informant has given correct information in the past; (2) independent police investigation corroborates the informant's statements; (3) some basis for the informant's knowledge is shown; or (4) the informant predicts conduct or activities by the suspect that are not ordinarily easily predicted. Depending on the facts, other considerations may come into play in establishing the reliability of the informant or the hearsay.

*Jaggers*, 687 N.E.2d at 182.

[10] Officer Hicks's affidavit reads in pertinent part:

> I, Matthew Hicks being an officer with the [DNR] Law Enforcement Division … have probable cause to believe that certain properties constituting fruits, instrumentalities, and evidence of the crime of:  Theft under IC 35-43-4-2, Aiding, Inducing or Causing an Offense under IC 35-41-2-4, Hunting Ginseng without the consent of Landowner under IC 14-22-10-1(3) and Harvesting Illegal Ginseng under 14-31-3-13, 312 IAC 19-1-8;[4] evidence of these crimes can be further substantiated at the properties hereinafter described, is concealed in [McCollum's residence and vehicles and Boyd's residence].
>
> The property to be seized is described as follows:  any and all Ginseng or equipment related to the illegal digging and

---

[4] The last two provisions relate to ginseng harvesting restrictions set by the DNR.

harvesting of wild Ginseng, any storage devices which may contain information related to the theft of ginseng or the trespass in order to obtain, including: trail cameras, SD cards from trail cameras, or cameras and computers that can potential [sic] house the described information.

Your affiant has probable cause to believe that William McCollum, Thomas Hartwell and Robert Boyd are collecting ginseng, a monetarily valuable resource, without permission of the landowner thus exerting unauthorized control over property of another person, with intent to deprive the other person of any parts of its value or use; committing theft. Your affiant believes, with information gathered during this investigation that the crime(s) mentioned above have continued and will continue through the legal ginseng harvesting season. Information obtained from a tracking devise [sic] placed on the vehicle of William McCollum has demonstrated McCollum drives Boyd and Hartwell to various locations throughout the region to illegally dig ginseng, then later picks them up.

On 09/21/2015 information gathered from the tracking device led to an arrest, in Ripley County, of Hartwell and Boyd for Hunting Ginseng without Consent of the Landowner and Harvesting Illegal Ginseng. During the interview Hartwell stated he did not have permission to dig Ginseng on any of the properties he had dug on. Hartwell stated that Boyd was digging with him but knew nothing about ginseng or the locations they had dug. Hartwell stated McCollum was just the driver and McCollum stated he was too old to dig.[5] Hartwell, when asked if he was the leader of the group, stated yes. He organized and decided where to dig. Based on information obtained from charges which led to Hartwell currently being on probation,

---

[5] The record indicates that McCollum was born in 1945. Appellant's App. at 3.

Hartwell has been digging ginseng for forty years.[6]

**Thomas Hartwell**, in his plea agreement, is prohibited from harvesting or possessing ginseng.  Hartwell is in violation of the following statutes/codes; Theft under IC 35-43-4-2, Hunting Ginseng without the consent of Landowner under IC 14-22-10-1 (3) and Harvesting Illegal Ginseng under 14-31-3-13, 312 IAC 19-1-8 Hartwell has also violated several of the terms of his probation.

**Robert Boyd**, who Hartwell stated knows nothing about ginseng, has turned in over twenty pounds of wet ginseng since 09/03/2015.  Jean Klene, the owner of K & K roots [sic], stated that when she saw the large amounts of ginseng Boyd was selling, she knew Boyd was selling for Hartwell.  Klene asked Boyd if he was selling for Hartwell and Boyd smiled really big.  Boyd is in violation of the following statuettes [sic]/codes; Theft under IC 35-43-4-2, Aiding, Inducing or Causing an Offense under IC 35-41-2-4, Hunting Ginseng without the consent of Landowner under IC 14-22-10-1 (3) and Harvesting Illegal Ginseng under 14-31-3-13, 312 IAC 19-1-8.

**William McCollum**, the driver, stated he has driven Boyd and Harwell [sic] ten times since the ginseng season opened and is in violation of Aiding, Inducing or Causing an Offense under Ind. Code § 35-41-2-4.  McCollum enabled Hartwell and Boyd to commit the above offenses and under the above statute is in violation of the same crimes committed as Boyd and Hartwell; Theft under Ind. Code § 35-43-4-2, Hunting Ginseng without the consent of Landowner under IC 14-22-10-1 (3) and Harvesting Illegal Ginseng under 14-31-3-13, 312 IAC 19-1-8.

---

[6] The affidavit does not indicate who arrested Hartwell and Boyd or who interviewed Hartwell, Boyd, and McCollum on September 21.  At the suppression hearing, Officer Hicks testified that he "encountered" Hartwell, Boyd, and McCollum on that date and that no one was taken into custody.  Tr. at 34-35.

Any and all ginseng harvested by Harwell [sic] is illegal based on the terms of Hartwell's probation. Boyd and McCollum, in having involvement with Hartwell, are Aiding and Causing an offense under IC 35-41-2-4.

Since 09/01/15 Boyd has sold over 20 pounds of ginseng. Hartwell is prohibited from harvesting or possessing ginseng, therefore, all of the ginseng dug in that timeframe is illegal. At the current buying price, 20 pounds of ginseng would bring in $2,000.00 wet or $2,660.00 dry. Based on the current buying price it averages out to approximately $2,300.00 of illegal ginseng that Boyd has sold making it a Level 6 Felony under IC 35-43-4-2.

On 09/25/15 CI [confidential informant] stated Harwell [sic] and Boyd have been digging every day since they were arrested on 09/21/15 trying to make up for lost money. CI stated McCollum has not been driving them but they have been washing and drying the ginseng at McCollum's house. CI stated they are getting ready to sell a large amount in Bloomington because the ginseng dealers pay more for ginseng there. CI stated Boyd and McCollum know Hartwell is on probation and cannot dig or possess ginseng. CI stated Hartwell does not keep ginseng in his apartment because his girlfriend will not allow it.

CI has provided a great deal of information related to this case. The information provided related to the location of the illegal ginseng combined with the facts established, on 09/21/15, are the foundation of this request.

Your affiant is applying for judicial authorization to search the residence and vehicles of William McCollum … and the residence of Robert Boyd ….

This affidavit is made for the sole purpose of obtaining a warrant for search. Therefore, based on the facts that your affiant has learned during this investigation and my training and experience,

your affiant believes that I have probable cause to believe that searching William McCollum's residence and vehicles and Robert Boyd's residence will lead to the evidence of the violation of ginseng laws and rules, and theft laws. Your affiant respectfully requests the Court to issue a warrant for search.

Appellant's App. at 213-16.

[11] The first three paragraphs of the affidavit are primarily recitations of the crimes that McCollum, Hartwell, and Boyd allegedly committed and the suspected whereabouts of evidence related to those crimes. As for Officer Hicks's statement that the tracking device placed on McCollum's vehicle demonstrated that he drove Boyd and Hartwell to illegally harvest ginseng, McCollum asserts that such a device "cannot provide any information about who is driving the vehicle; who the other occupants of the vehicle are; or what the occupants of that vehicle were doing in the various locations to which it was tracked." Appellant's Br. at 11. He further asserts that if Officer Hicks "had that information, it had to be provided by yet another hearsay declarant whose credibility has not been established." *Id*. The State does not dispute these assertions.

[12] Regarding Hartwell's statements, which are hearsay, McCollum contends, "Assuming arguendo that driving a person to dig ginseng was a crime,[7] there is nothing within the hearsay statement of Hartwell that would indicate that the fruits of the instrumentalities of the violation of the ginseng laws would be found at McCollum's residence." Appellant's Br. at 8-9. We agree. At most, Hartwell's statements (including that McCollum was "just the driver," which McCollum himself admitted) suggest that any incriminating evidence would be found in McCollum's vehicles, which apparently either were not searched or contained no contraband. We also agree with McCollum's contention that neither Boyd's nor Klene's statements, which are also hearsay, "incriminate [him] in any way or provide any basis for a person to believe that evidence regarding the alleged violation of the ginseng and theft laws would be found at [his] residence." *Id*. at 8. If anything, their statements suggest that

---

[7] McCollum correctly observes that "[t]he digging of ginseng within season is a completely legal activity" and that – except for the CI's statements, which we consider below – "[n]othing in the affidavit alleges that [he] was aware that Hartwell was digging ginseng at locations where he did not have permission" or that "Hartwell was prohibited from digging or possessing ginseng by virtue of the terms of a previous probation proceeding." Appellant's Br. at 8, Reply Br. at 8. Based on McCollum's multiple contacts with Hartwell, a reasonable inference could be drawn that McCollum knew that Hartwell's activities were illegal. If McCollum actually did not have such knowledge, then he could assert a mistake of fact defense. *See* Ind. Code § 35-41-3-7 ("It is a defense that the person who engaged in the prohibited conduct was reasonably mistaken about a matter of fact, if the mistake negates the culpability required for commission of the offense.").

incriminating evidence would be found on Boyd's, Hartwell's, and/or Klene's property.[8]

[13] This leaves us with the hearsay statements of the CI, who purportedly told an unidentified law enforcement officer[9] that McCollum "has not been driving [Hartwell] and Boyd but they have been washing and drying the ginseng at McCollum's house"; that "they [were] getting ready to sell a large amount in Bloomington because the ginseng dealers pay more for ginseng there"; that "Boyd and McCollum know that Hartwell is on probation and cannot dig or possess ginseng"; and that "Hartwell does not keep ginseng in his apartment because his girlfriend will not allow it," which suggests that McCollum could have kept the ginseng in his residence. Appellant's App. at 215. McCollum asserts that "nowhere within the affidavit does [Officer Hicks] make any attempt to establish the trustworthiness of the hearsay information provided by [the] CI in an effort to provide probable cause." Appellant's Br. at 9. Once again, we agree. There is no indication that the CI had given correct information in the past or that independent police investigation corroborated the CI's statements. *Cf. Jaggers*, 687 N.E.2d at 182. In fact, McCollum himself

---

[8] Because we conclude that Hartwell's, Boyd's, and Klene's statements do not suggest that incriminating evidence would be found in McCollum's residence, we need not address McCollum's argument that the affidavit does not establish their credibility. That said, to the extent the State asserts that Hartwell's statements are credible because they are against his penal interest, the affidavit's details regarding the DNR's investigation and his arrest are so sparse that it is impossible to determine whether his statements "subject[ed] him to any additional criminal liability" and thus demonstrated his credibility. *Spillers*, 847 N.E.2d at 957.

[9] The State posits that "Officer Hicks knew the identity of the confidential informant and dealt with the confidential informant face-to-face." Appellee's Br. at 21. Officer Hicks's suppression testimony supports this hypothesis, but the affidavit is silent on this point.

purportedly told officers on September 21 that he *had* been driving Hartwell and Boyd, which contradicts the CI's statement. Moreover, there is nothing in the affidavit to establish the basis for the CI's knowledge of McCollum's activities other than the CI's own statements. *See Cartwright v. State*, 26 N.E.3d 663, 669 (Ind. Ct. App. 2015) (finding informant's hearsay statements insufficient to establish probable cause based partly on this ground), *trans. denied*. And the affidavit does not establish the accuracy of the CI's predictions regarding McCollum's activities. *Cf. Gates*, 462 U.S. at 225-26 (affidavit established accuracy of informant's predictions regarding defendants' activities). Viewing the affidavit in its totality, we cannot say that the judge who issued the warrant had a substantial basis for concluding that probable cause existed to search McCollum's residence for evidence of offenses related to the illegal harvesting of ginseng. Therefore, we conclude that the search warrant was invalid under the Fourth Amendment.

## Section 2 – The good-faith exception to the exclusionary rule is inapplicable, and therefore the evidence seized pursuant to the search warrant must be suppressed.

This does not end our inquiry, however, because "[e]xclusion of evidence recovered pursuant to a search warrant issued by a judge or magistrate is not required when the officer obtaining the warrant has acted in objective good faith and within the scope of the warrant." *Gerth v. State*, 51 N.E.3d 368, 375 (Ind. Ct. App. 2016) (citing *United States v. Leon*, 468 U.S. 897, 920 (1984)). The *Leon* court "cautioned that certain police conduct would not qualify for this"

good-faith exception, including where the warrant was based on an affidavit so lacking in indicia of probable cause as to render official belief in the validity of the warrant entirely unreasonable. *Jaggers*, 687 N.E.2d at 184. Law enforcement officers are reasonably charged with knowing the basic requirements of Indiana Code Section 35-33-5-2. *Id*. at 186. Thus, Officer Hicks should have known that establishing the CI's credibility or corroborating the CI's hearsay statements was necessary. *Brown v. State*, 905 N.E.2d 439, 447 (Ind. Ct. App. 2009). The officer also should have known that the other statements in the affidavit did not provide probable cause to search McCollum's residence. Therefore, we conclude that the officer's reliance on the validity of the warrant was not objectively reasonable. Accordingly, the good-faith exception is inapplicable, and the evidence seized pursuant to the search warrant must be suppressed.[10]

## Section 3 – McCollum's incriminating statements must be suppressed under the fruit of the poisonous tree doctrine.

Finally, McCollum argues that his incriminating statements to Officer Hicks must be suppressed under the fruit of the poisonous tree doctrine.[11] Our supreme court has stated that "[t]his extension of the exclusionary rule bars

---

[10] The State does not make a separate argument regarding the admissibility of the ginseng that McCollum retrieved from his neighbor's shed. Consequently, we do not consider that issue.

[11] McCollum did not specifically raise this issue in his motions to suppress, but he did raise it in the proposed findings that he submitted to the trial court. The trial court made no findings on this issue in its order, and the State does not contend that McCollum has waived it.

evidence directly obtained by the illegal search or seizure as well as evidence derivatively gained as a result of information learned or leads obtained during that same search or seizure." *Clark v. State*, 994 N.E.2d 252, 266 (Ind. 2013) (citing, inter alia, *Wong Sun v. United States*, 371 U.S. 471, 485 (1963)). "The question is if the derivative evidence 'has been come at by exploitation of that illegality or instead by means sufficiently distinguishable to be purged of the primary taint.'" *Id*. (quoting *Wong Sun*, 371 U.S. at 488). "In making this determination, courts generally consider (1) the time elapsed between the illegality and the acquisition of the evidence; (2) the presence of intervening circumstances; and (3) the purpose and flagrancy of the official misconduct." *Id*. (citation and quotation marks omitted). "The defendant must first prove the Fourth Amendment violation and that the evidence was a 'fruit' of that search; the State must then show that the evidence may nevertheless be admitted." *Id*.

[16] McCollum has proved that the search of his residence violated the Fourth Amendment because Officer Hicks's affidavit lacked sufficient indicia of probable cause and that the officer's reliance on the invalid warrant was not objectively reasonable. McCollum argues that the warrant "was the only reason for the officers to confront him on the day in question" and that Officer Hicks's questioning "would not have occurred absent the warrant." Appellant's Br. at 13. The State offers no response to this argument. An appellee's "failure to respond to an issue raised in an appellant's brief is, as to that issue, akin to failing to file a brief." *Cox v. State*, 780 N.E.2d 1150, 1162 (Ind. Ct. App. 2002). "This failure does not relieve us of our obligation to correctly apply the law to

the facts in the record in order to determine whether reversal is required. However, counsel for appellee remains responsible for controverting arguments raised by appellant." *Id*. (citation omitted). To prevail on this issue, McCollum must establish only prima facie error. *Id*. "Prima facie means at first sight, on first appearance, or on the face of it." *Id*.

[17] The record establishes that Officer Hicks and four other officers arrived at McCollum's home to execute a search warrant based on an affidavit so lacking in indicia of probable cause that Officer Hicks should have known that the warrant was invalid. McCollum arrived shortly thereafter. According to Officer Hicks, he asked McCollum "if he would accompany me up to the top of the hill so I could ask him some questions[.]" Tr. at 12. The officer told McCollum that he was "there to serve a search warrant on his house" and "actually read him the search warrant." *Id*. at 13. Office Hicks then questioned McCollum about his activities with Hartwell and Boyd and searched the home, in which he found ginseng, marijuana, and paraphernalia. Based on the foregoing, we conclude that McCollum has made a prima facie showing that his statements were obtained by exploitation of the illegal search warrant. *Cf. Cartwright*, 26 N.E.3d at 671 (finding defendant's post-arrest, post-*Miranda* statements inadmissible as fruits of unconstitutional search based on "a warrant issued on essentially uncorroborated hearsay from an anonymous informant"). The State has made no contrary argument, and it is not our job to make one on its behalf. Consequently, we reverse the denial of McCollum's motions to suppress and remand for further proceedings consistent with our decision.

Reversed and remanded.

Kirsch, J., and May, J., concur.