
FILED

Feb 18 2016, 9:58 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEYS FOR APPELLANT

Jillian C. Keating
Cathy M. Brownson
Coots Henke & Wheeler, P.C.
Carmel, Indiana

ATTORNEYS FOR APPELLEE

Gregory F. Zoeller
Attorney General

Brian Reitz
Deputy Attorney General
Indianapolis, Indiana

IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| David W. Gerth,<br>*Appellant-Defendant,*<br><br>v.<br><br>State of Indiana,<br>*Appellee-Plaintiff.* | February 18, 2016<br><br>Court of Appeals Cause No.<br>29A02-1506-CR-693<br><br>Appeal from the Hamilton<br>Superior Court<br><br>The Honorable Daniel J. Pfleging,<br>Judge<br><br>Trial Court Cause No.<br>29D02-1309-FC-8054 |

**Barnes, Judge.**

## Case Summary

[1]    David Gerth appeals his convictions for Class C felony dealing in marijuana and Class D felony maintaining a common nuisance. We reverse.

## Issue

The restated issue before us is whether the trial court properly admitted evidence recovered from Gerth's property following the execution of a search warrant.

## Facts

Sometime in August 2013, Detective Sergeant J. Michael Howell of the Hamilton County Sheriff's Department received information from a confidential informant ("CI") asserting that Gerth was selling marijuana from his home in Westfield. Shortly after receiving this information, however, the CI was "deactivated" because he had not completed all of the obligations required of him before his case was adjudicated. Tr. p. 159-60. After the CI was deactivated, "the investigation on David Gerth at that point stopped." *Id.* at 143. However, the following month Detective Howell received an email from a fellow officer relaying an anonymous tip that Gerth was dealing marijuana.

On September 19, 2013, Detective Howell applied for and obtained a search warrant for a canine drug sniff at Gerth's residence and around the outbuildings on his property. The probable cause affidavit submitted with the warrant application stated:

> In August of 2013 this affiant received information from a confidential informant (CI) who had provided accurate information in the past, that a white male named David Gerth was selling marijuana. The CI advised that David Gerth resided in Westfield, Hamilton County, Indiana and his residence was located on 191st Street. The informant then identified David

Gerth off a Hamilton County Jail bookin [sic] photograph. David Gerth listed his address as 904 East 191st Street in Westfield Indiana.

On September 18th 2013 I received an anonymous crime tip received by Captain Brody Houston of the Westfield Police Department from an unknown subject. The crime tip advised that a subject by the name of David Gerth and Robert M. Gerth, who reside at 811 East 191st Street, Westfield Indiana, were growing and selling marijuana from numerous locations on the property including the barn and residence.

On September 18th 2013 I conducted surveillance in the area of East 191st Street Westfield, Indiana. I determined that there is not a residence located at 811 East 191st Street as stated in the anonymous tip. However, I did locate a residence at 904 East 191st Street, which is the residence that David Gerth had listed on his book-in information. I located a vehicle in the driveway which gave a return through BMV of belonging to David William Gerth of 904 East 191st Street, Westfield, Hamilton County, Indiana. This residence contained a barn on the property as described in the anonymous tip.

Motion to Suppress Hrg., Ex. 1.

Officers brought a dog to Gerth's property, and it reacted positively to the presence of drugs. Based on this information, Detective Howell obtained a warrant to search the interior of Gerth's residence and outbuildings. Inside Gerth's residence, officers found numerous indicia of marijuana dealing, including marijuana in baggies and jars, marijuana plants, scales, seeds, growing equipment, and a growing room in the basement.

The State charged Gerth with Class C felony dealing in marijuana, Class D felony possession of marijuana, and Class D felony maintaining a common nuisance. Gerth filed a motion to suppress all of the evidence found in his residence, asserting that the initial search warrant issued for the canine sniff was not supported by probable cause. The trial court denied the motion to suppress, and the cause proceeded to bench trial. The trial court found Gerth guilty as charged but entered convictions only for Class C felony dealing in marijuana and Class D felony maintaining a common nuisance. Gerth now appeals.

## Analysis

Gerth contends the trial court erroneously admitted evidence discovered during the search of his residence. Because Gerth did not seek an interlocutory appeal of the denial of his motion to suppress but proceeded to trial, we review his claim as one challenging the admission of evidence at trial. *See Carpenter v. State*, 18 N.E.3d 998, 1001 (Ind. 2014). When ruling on the admission of evidence at trial following denial of a motion to suppress, a trial court must consider the foundational evidence presented at trial. *Id.* "It also considers the evidence from the suppression hearing that is favorable to the defendant only to the extent it is uncontradicted at trial." *Id.* Trial courts are in the best position to weigh the evidence and assess witness credibility, and we review its rulings on admissibility for abuse of discretion and reverse only if a ruling is "'clearly against the logic and effect of the facts and circumstances and the error affects a party's substantial rights.'" *Id.* (quoting *Clark v. State*, 994 N.E.2d 252, 260 (Ind. 2013)). However, the ultimate determination of the constitutionality of a search

or seizure is a question of law that we review de novo. *Id.* In the present case, there was no uncontradicted evidence favorable to Gerth presented at the suppression hearing—all of the relevant information was presented at the trial and in the probable cause affidavit itself.

[8] Gerth argues that the two hearsay tips in the probable cause affidavit lacked sufficient indicia of reliability to support the issuance of a search warrant. When deciding whether to issue a search warrant, the issuing magistrate must "'make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit . . . there is a fair probability that contraband or evidence of a crime will be found in a particular place.'" *State v. Spillers*, 847 N.E.2d 949, 952-53 (Ind. 2006) (quoting *Illinois v. Gates*, 462 U.S. 213, 238, 103 S. Ct. 2317, 2332 (1983)). On appeal, we must determine whether the magistrate had a "'substantial basis'" for concluding that probable cause existed. *Id.* at 953 (quoting *Gates*, 462 U.S. at 238-39, 103 S. Ct. at 2332). A substantial basis requires us to focus on whether reasonable inferences drawn from the totality of the evidence support the determination of probable cause, while giving significant deference to the magistrate's determination. *Id.*

[9] Provisions governing searches and seizures found in the Fourth Amendment to the United States Constitution and Article 1, Section 11 of the Indiana Constitution are partially codified in Indiana Code Section 35-33-5-2, which governs the information that must be included in an affidavit for a search warrant. *Id.* An affidavit based on hearsay information must either:

(1) contain reliable information establishing the credibility of the source and of each of the declarants of the hearsay and establishing that there is a factual basis for the information furnished; or

(2) contain information that establishes that the totality of the circumstances corroborates the hearsay.

Ind. Code § 35-33-5-2(b).

The trustworthiness of hearsay for the purpose of proving probable cause can be established in a number of ways, including where: (1) the informant has given correct information in the past, (2) independent police investigation corroborates the informant's statements, (3) some basis for the informant's knowledge is demonstrated, or (4) the informant predicts conduct or activity by the suspect that is not ordinarily easily predicted.

*Spillers*, 847 N.E.2d at 954 (citing *Jaggers v. State*, 687 N.E.2d 180, 182 (Ind. 1997)). However, these examples are not exclusive and other considerations may come into play when establishing the reliability of the hearsay. *Id.*

[10] The probable cause affidavit in this case stated that the CI "had provided accurate information in the past . . . ." Motion to Suppress Hrg. Ex. 1. It is true "that a statement in an affidavit declaring that the informant has previously supplied valid information is sufficient to satisfy the statutory requirement of facts as to the credibility of the informant." *Powers v. State*, 440 N.E.2d 1096, 1105 (Ind. 1982), *cert. denied*. However, a conclusory statement such as that an informant has "provided accurate information in the past," without any elaboration, is frowned upon. Motion to Suppress Hrg. Ex. 1. In *Snover v.*

*State*, 837 N.E.2d 1042, 1050 (Ind. Ct. App. 2005), we held that a recitation in a probable cause affidavit that "the informant is 'a confidential source who had provided information in the past which was determined to be credible and reliable'" failed to provide sufficient evidence for the magistrate to gauge the informant's credibility. *See also Wood v. State*, 592 N.E.2d 740, 744 (Ind. Ct. App. 1992) ("The bare conclusory and hearsay statement that affiant was told by Officer X that the informant had provided reliable information will not suffice for the requirement . . . that the affidavit 'contain reliable information establishing the credibility of the source.'"). By contrast, for example, in the *Powers* case, the probable cause affidavit related the details of eight prior occasions on which the informant had provided accurate information related to drug trafficking. *Powers*, 440 N.E.2d at 1100. Here, the bare-bones statement in the affidavit that the CI had provided accurate information in the past fails to reveal whether such information had led to any arrests, or convictions, or whether it was readily-obtainable information that anyone could have provided, or how long ago or how many times the CI had provided information. We generally have not regarded such generic statements to be sufficient to establish an informant's credibility.

[11]   The issuance of the search warrant was also based on the later, completely anonymous tip that Gerth was selling marijuana. There is absolutely no indication of this informant's credibility, even less than for the previously-mentioned CI. The State contends nonetheless that the two informants reciprocally corroborated each other's information, thereby lending credibility

to both of them. We disagree. For this proposition the State relies upon a line of cases from the Eighth Circuit, which generally hold "that information provided by one informant may be 'corroborated with specific, consistent details provided by [a] second informant,' and that, in fact, the tips of two informants may be 'reciprocally corroborative, rendering their information enough to support a finding of probable cause.'" *United States v. Leppert*, 408 F.3d 1039, 1041 (8th Cir. 2005) (citing *United States v. Fulgham*, 143 F.3d 399, 401 (8th Cir. 1998)); *see also United States v. Jackson*, 67 F.3d 1359, 1365 (8th Cir. 1995), *cert. denied*. However, all of these cases from the Eighth Circuit were ones in which one informant with established credibility corroborated statements provided by a second informant with untested credibility. None of these cases held that two informants with insufficiently established credibility could both be found reciprocally credible for giving the same information, particularly where, as here, the information lacked detail or specifics. *See Leppert*, 408 F.3d at 1041 (noting that one of the informants had given "reliable information in the past that resulted in numerous successful prosecutions"); *Fulgham*, 143 F.3d at 401 (noting that one of the informants had given reliable information in the past "resulting in several arrests and the recovery of stolen property and illegal substances"); *Jackson*, 67 F.3d at 1365 (noting that one of the informants "had proven reliable in the past and . . . was not known ever to have given false information").

[12] Additionally, there was no meaningful corroboration of the tips by police. The only corroboration was confirmation of Gerth's address,[1] that his car was in the driveway, and that there was a barn on property. It is well-settled that police cannot rely upon facts "readily available to the general public" to corroborate an informant's statements. *Cartwright v. State*, 26 N.E.3d 663, 669 (Ind. Ct. App. 2015) (holding confirmation that informant adequately described location of defendant's residence and that there was an RV in the yard was not adequate corroboration), *trans. denied*; *Ware v. State*, 859 N.E.2d 708, 716 (Ind. Ct. App. 2007) ("Indiana courts have found that confirming merely that a suspect lives in the residence and drives the vehicle identified by the informant is not adequate to establish the informant's credibility and therefore such confirmation does not support a finding of probable cause."), *trans. denied*. All of the purported "corroboration" of the informants' statements in this case came from knowledge any member of the general public could have easily obtained.

[13] Furthermore, Detective Howell omitted information from the probable cause affidavit regarding the CI's credibility that we deem to be highly material. Detective Howell failed to mention in the affidavit that the CI was deactivated for failure to complete the requirements of his CI agreement before adjudication of his underlying case shortly after providing his tip regarding Gerth. Moreover, Detective Howell evidently believed that the CI's tip was not worth

---

[1] In fact, the anonymous tipster had provided incorrect information regarding Gerth's address, although the CI provided the correct address. Thus, confirmation of Gerth's address did not constitute any corroboration of the anonymous tipster's information.

following up on after the CI was deactivated; Detective Howell failed to mention in the affidavit that he stopped investigating Gerth after the CI's deactivation. In other words, one could infer that law enforcement itself did not consider the CI's tip to be trustworthy enough to warrant further investigation, but that fact was not disclosed to the magistrate.

[14] A probable cause affidavit must include all "material facts" known to law enforcement, which includes facts that "'cast doubt on the existence of probable cause.'" *Ware*, 859 N.E.2d at 718 (quoting *Query v. State*, 745 N.E.2d 769, 772 (Ind. 2001)). Although it may not be practical to include all information related to an investigation in a probable cause affidavit, "the best course for police to follow is to include any information that could conceivably affect a probable cause determination." *Id.* at 719-20. As other courts have held, and we agree, "police officers seeking a warrant should provide the magistrate or trial judge with all information at their disposal concerning a source's reliability." *Galloway v. State*, 772 S.E.2d 832, 836 (Ga. Ct. App. 2015). When material information is omitted from a probable cause affidavit, such omission will invalidate a warrant if (1) the police omitted facts with the intent to make the affidavit misleading or with reckless disregard for whether it would be misleading, and (2) the affidavit supplemented with the omitted information would have been insufficient to support a finding of probable cause. *Ware*, 859 N.E.2d at 718. It has been recognized that omissions from a probable cause affidavit are made with reckless disregard "if an officer withholds a fact in his ken that '[a]ny reasonable person would have known that this was the kind of

thing the judge would wish to know.'" *Wilson v. Russo*, 212 F.3d 781, 788 (3rd Cir. 2000) (quoting *United States v. Jacobs*, 986 F.2d 1231, 1235 (8th Cir. 1993)).

[15]   Any reasonable person asked to issue a search warrant in this case would have wanted to know that the CI was deactivated after giving the tip regarding Gerth and that law enforcement stopped investigating Gerth for marijuana dealing after that deactivation. Such information directly impacts assessment of the CI's credibility—which already was only supported by a bare-bones recitation that he had provided accurate information in the past. Even if that recitation had been sufficient, this reckless material omission of fact regarding the CI's credibility leads us to discount that credibility. We conclude that the two uncorroborated tips from informants with insufficiently established credibility failed to provide sufficient evidence of probable cause for issuance of the warrant.

[16]   This brings us to the question of good faith. Exclusion of evidence recovered pursuant to a search warrant issued by a judge or magistrate is not required when the officer obtaining the warrant has acted in objective good faith and within the scope of the warrant. *United States v. Leon*, 468 U.S. 897, 920, 104 S. Ct. 3405, 3419 (1984). The good faith exception to the exclusionary rule has been codified in Indiana. The exception applies to evidence obtained by a law enforcement officer if:

   (1) it is obtained pursuant to:

> (A) a search warrant that was properly issued upon a determination of probable cause by a neutral and detached magistrate, that is free from obvious defects other than nondeliberate errors made in its preparation, and that was reasonably believed by the law enforcement officer to be valid; or
>
> (B) a state statute, judicial precedent, or court rule that is later declared unconstitutional or otherwise invalidated; and
>
> (2) the law enforcement officer, at the time he obtains the evidence, has satisfied applicable minimum basic training requirements established by rules adopted by the law enforcement training board under IC 5-2-1-9.

Ind. Code § 35-37-4-5(b).

[17] "The good faith exception cannot be so broadly construed as to obliterate the exclusionary rule." *Newby v. State*, 701 N.E.2d 593, 602 (Ind. Ct. App. 1998). "Police officers have a duty and obligation of full and fair disclosure of all material facts when applying for a warrant." *Hayworth v. State*, 904 N.E.2d 684, 698 (Ind. Ct. App. 2009). "To trigger the exclusionary rule, police conduct must be sufficiently deliberate that exclusion can meaningfully deter it, and sufficiently culpable that such deterrence is worth the price paid by the justice system." *Herring v. United States*, 555 U.S. 135, 144, 129 S. Ct. 695, 702 (2009). "[T]he exclusionary rule serves to deter deliberate, reckless, or grossly negligent conduct, or in some circumstances recurring or systemic negligence." *Id.* Police cannot rely on the good faith exception to the exclusionary rule if they

have engaged in deliberate, reckless, or grossly negligent conduct in preparing a probable cause affidavit. *Hayworth*, 904 N.E.2d at 698-99; *see also United States v. Simmons*, 771 F. Supp. 2d 908, 926-27 (N.D. Ill. 2011).

[18] We have already held that Detective Howell recklessly omitted material facts regarding the CI's credibility from the probable cause affidavit. This is conduct that can and should be deterred by the exclusionary rule. *See Hayworth*, 904 N.E.2d at 699. Thus, it would be inappropriate in this case to apply the good faith exception to the exclusionary rule.[2] The evidence recovered from Gerth's residence following issuance of the original search warrant for the canine sniff should have been suppressed and not introduced into evidence. The State does not and cannot argue that admission of that evidence was harmless error.

## Conclusion

[19] The probable cause affidavit failed to include sufficient evidence of probable cause to support issuance of the search warrant, particularly when the omitted material information regarding the CI's credibility is considered. And in light of that recklessly omitted information, we conclude that application of the exclusionary rule is warranted and the good faith exception to that rule is not.

---

[2] The State suggests that because Detective Howell initially sought a warrant only for a canine sniff of Gerth's residence and not a search of the interior of the residence, it indicates good faith. This would seem to imply that there was some lower level of probable cause needed to justify the canine sniff, but that would be contrary to the holding of *Florida v. Jardines*, -- U.S. --, 133 S. Ct. 1409 (2013) (holding that canine sniff to investigate a home and its immediate surroundings is a "search" for Fourth Amendment purposes).

The trial court erred in introducing the evidence recovered from Gerth's residence into evidence. We reverse Gerth's convictions.

Reversed.

Robb, J., and Altice, J., concur.