# MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

May 20 2019, 8:53 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Matthew J. McGovern
Anderson, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

George P. Sherman
Supervising Deputy Attorney General
Indianapolis, Indiana

## IN THE
## COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Clark D. Johnson,<br>*Appellant-Defendant,*<br><br>v.<br><br>State of Indiana,<br>*Appellee-Plaintiff* | May 20, 2019<br><br>Court of Appeals Case No.<br>18A-CR-1993<br><br>Appeal from the Vanderburgh Circuit Court<br><br>The Honorable David D. Kiely, Judge<br><br>The Honorable Kelli E. Fink, Magistrate<br><br>Trial Court Cause No.<br>82C01-1708-F2-4655 |

**Altice, Judge.**

## Case Summary

[1]     Following a bench trial, Clark D. Johnson was convicted of two counts of Level 2 felony dealing in cocaine, one count of Level 6 felony operating a vehicle as a habitual traffic violator, and one count of Class A misdemeanor possession of marijuana.  He was also adjudicated a habitual offender.  On appeal, Johnson presents the following consolidated and restated issues: (1) whether the trial court properly admitted evidence found in Johnson's apartment pursuant to the execution of a search warrant and (2) whether the State presented sufficient evidence to support the habitual offender adjudication.

[2]     We affirm.

## Facts & Procedural History

[3]     On August 1, 2017, Evansville Police Department detectives with the narcotics task force received information from a confidential informant (C.I.) indicating that Johnson was involved in dealing large amounts of cocaine out of his apartment.  The following day, after meeting with the C.I., discovering that Johnson had active arrest warrants, and briefly surveilling the apartment, officers stopped Johnson and arrested him when he left his apartment and drove to the lot of a nearby gas station.  In a search incident to arrest, officers recovered a significant amount of cash from Johnson's person and a small amount of marijuana from his vehicle.

[4]     Immediately thereafter, Detective Michael Gray, with the assistance of the local prosecuting attorney, drafted a probable cause affidavit and applied for a search warrant for Johnson's apartment. The affidavit provided the following factual basis for the request:

> On August 1, 2017, Detective Jeff Hands received information from a credible and reliable confidential informant regarding Clark Darnell Johnson (DOB: 12/01/1978). The confidential informant detailed that Johnson was selling cocaine from his apartment located at 525 S. New York Ave, Evansville, Vanderburgh County, Indiana and was last inside the apartment on July 29, 2017. Detective Hands identified Johnson and learned that he had two active warrants for his arrest. On August 2, 2017, Detective Hands met with the confidential informant and was directed to Johnson's apartment by the informant. The confidential informant directed detectives to the rear apartment of 525 S. New York Ave. identifying this as Clark Johnson's residence.[1] The C.I. also informed detectives that Johnson drove a white suburban that was parked behind the residence.
>
> On August 2, 2017 after locating Johnson's apartment, detective Gray established surveillance on Johnson's apartment at approximately 1210 hours. Shortly after establishing surveillance, detective Gray observed Johnson leaving the apartment and driving a white Chevy Suburban. Johnson drove north through the alley and crossed Walnut, pulling on to the lot of the gas station located on the northeast corner of Walnut and Kentucky Ave. Det. Schmitt and Detective Hensley approached [Johnson] as he was sitting in the driver seat of the vehicle and

---

[1] The residence was described elsewhere in the probable cause affidavit as a single-story home with three separate apartments. Each apartment had its own entrance. The individual entrances were situated with one at the front of the home, one on the side, and one in the back.

placed him under arrest for his warrants. A check of Johnson's driver status revealed a status of Habitual Traffic Violator. During a search of Johnson's person, Detectives located $1,048.00 in U.S. Currency. Johnson had $750.00 wrapped with a rubber band in his left front pocket and $298.00 loose in his right front pocket. There was a single one hundred dollar bill and a single fifty dollar bill with this money. All other bills were twenty dollar bills or smaller. When asked about his employment, Johnson informed detectives that he was unemployed and attended Ivy Tech.

During an Inventory of the vehicle, Detective Kingery located a chunk of green leafy substance that field tested positive for THC. This substance was located on the center console covered by a napkin and had a field weight of .6 gram. Johnson was the only occupant of the vehicle. Johnson refused consent to search his apartment. Detectives went to 525 S. New York and spoke with the residents of the front apartment. These residents affirmed that Clark Johnson lived in the rear apartment by himself.

*Appellant's Appendix Vol. II* at 98-99. Officers obtained and executed the search warrant on the afternoon of August 2, 2017, recovering over 200 grams of cocaine, 150 rounds of ammunition, a stolen handgun, a digital scale, over $1000 cash in a safe, and items generally used in the manufacturing and dealing of crack cocaine.

[5] On August 4, 2017, the State charged Johnson with two counts of Level 2 felony dealing in cocaine (Counts I and II) and one count each of Level 6 felony operating a vehicle as a habitual traffic violator (Count III), Level 6 felony theft (Count IV), and Class A misdemeanor possession of marijuana (Count V). The State also alleged that Johnson was a habitual offender.

[6] Johnson filed a motion to suppress on September 18, 2017, which the trial court denied following a hearing. Johnson pursued an interlocutory appeal of the denial of his motion to suppress, but this court refused to accept jurisdiction of the interlocutory appeal.

[7] The matter proceeded to a bench trial on May 24, 2018, at which Johnson preserved his challenge to the evidence obtained as a result of the search warrant. The trial court found Johnson guilty of Counts I, II, III, and V but not guilty of Count IV. The presentation of the evidence on the habitual offender allegation was continued to July 10, 2018, at which time Johnson was found to be a habitual offender. Thereafter, on July 17, 2018, the trial court sentenced Johnson to an aggregate sentence of twenty-eight years in prison. Johnson now appeals. Additional information will be provided below as needed.

## Discussion & Decision

### 1. Admission of Evidence Found Pursuant to a Search Warrant

[8] Johnson contends that the search of his apartment violated the Fourth Amendment to the United States Constitution and Article 1, § 11 of the Indiana Constitution because the warrant was issued without probable cause. Further, he argues that the good faith exception is inapplicable here because no reasonable officer would have relied on the warrant.

[9] "In deciding whether to issue a search warrant, the task of the issuing magistrate is to make a practical, common sense decision whether, given all the

circumstances set forth in the affidavit, there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Hensley v. State*, 778 N.E.2d 484, 487 (Ind. Ct. App. 2002). On review, we are tasked with determining whether the magistrate had a "substantial basis" for concluding that probable cause existed. *Id*. (quoting *Query v. State*, 745 N.E.2d 769, 771 (Ind. 2001)). "A substantial basis requires the reviewing court, with significant deference to the magistrate's determination, to focus on whether reasonable inferences drawn from the totality of the evidence support the determination of probable cause." *Id*. "Sufficiency need not rest on a single piece of information, but rather in the way the pieces fit together." *Utley v. State*, 589 N.E.2d 232, 236 (Ind. 1992), *cert. denied*.

[10] The Fourth Amendment provides, "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." The text of Article 1, § 11 contains nearly identical language. These constitutional principles are partially codified in Ind. Code § 35-33-5-2, which governs the information that must be included in an affidavit for a search warrant. *State v. Spillers*, 847 N.E.2d 949, 953 (Ind. 2006). An affidavit based on hearsay information must either:

> (1) contain reliable information establishing the credibility of the source … and establishing that there is a factual basis for the information furnished; or

> (2) contain information that establishes that the totality of the circumstances corroborates the hearsay.

I.C. § 35-33-5-2(b).

[11] The trustworthiness of hearsay for the purpose of establishing probable cause can be established in a number of ways, including, among other things, where: (1) the informant has given correct information in the past, (2) independent police investigation corroborates the informant's statements, (3) some basis for the informant's knowledge is demonstrated, or (4) the informant predicts conduct or activity by the suspect that is not ordinarily easily predicted. *Spillers*, 847 N.E.2d at 954; *Gerth v. State*, 51 N.E.3d 368, 372 (Ind. Ct. App. 2016).

[12] In this case, the State acknowledged at the suppression hearing that the affiant, Detective Gray, did not set out any information in the affidavit supporting the claim that the C.I. was a "credible and reliable confidential informant." *Appellant's Appendix Vol. II* at 98-99. This concession was appropriate because a bare-bones statement such as the one provided is inadequate to establish the credibility of the C.I. *See Gerth*, 51 N.E.3d at 373 ("statement in the affidavit that the CI had provided accurate information in the past fails to reveal whether such information had led to any arrests, or convictions, or whether it was readily-obtainable information that anyone could have provided, or how long ago or how many times the CI had provided information"); *Snover v. State*, 837 N.E.2d 1042, 1050 (Ind. Ct. App. 2005) (aside from conclusory statement, affidavit provided "no evidence by which the issuing judge could have determined the confidential informant had credibility" and failed to indicate

"whether the confidential informant had provided reliable information on one occasion or on multiple occasions"), *trans. denied*; *Cf. U.S. v. May*, 399 F.3d 817, 824-26 (6th Cir. 2005) (reliability of confidential informant established where affiant stated that the source had furnished information for a period of six months, had worked with the affiant officer in the investigation of this matter, and had provided assistance in unrelated drug investigation cases).

[13] Because Detective Gray did not establish the credibility of the C.I., we must look to whether other information contained in the affidavit "establishes that the totality of the circumstances corroborates the hearsay." I.C. § 35-33-5-2(b)(2). In this regard, the State observes that the C.I. met with Detective Hand and pointed out Johnson's apartment, which the C.I. indicated he had been in three days prior to the search. The C.I. also specified that Johnson drove a white suburban that was parked behind the residence. That same day, officers established surveillance and determined that Johnson indeed lived in the apartment and drove a white suburban. This is not the type of corroboration, however, that meaningfully corroborates the C.I.'s hearsay statements. *See Gerth*, 51 N.E.3d at 374 ("It is well-settled that police cannot rely upon facts 'readily available to the general public' to corroborate an informant's statements.") (quoting *Cartwright v. State*, 26 N.E.3d 663, 669 (Ind. Ct. App. 2015), *trans. denied*); *Hayworth v. State*, 904 N.E.2d 684, 696 (Ind. Ct. App. 2009) (independent investigation by police inadequate to establish informant's credibility where investigation corroborated only publicly available facts such as

defendant's address, a truck near the property, and a generator supplying power to the home).

[14] The only possible corroboration of the C.I.'s information came from the search incident to arrest. The affidavit establishes that while surveilling Johnson's apartment, where he lived alone, he was observed leaving in his white suburban. Because he had active warrants, officers stopped and arrested him. Police recovered a user amount of marijuana from inside Johnson's vehicle and a significant amount of cash split between his two front pockets. The marijuana provides no corroboration of the C.I.'s statement that Johnson was dealing cocaine out of his apartment, but we cannot say the same about the cash. Johnson had over $1000 in his pockets, with $750 wrapped in a rubber band in one pocket and the rest loose in his other front pocket. All but two of the bills were $20 bills or smaller. As Detective Gray averred based on his training and experience, persons involved in unlawful drug sales frequently have large quantities of cash on their persons. The cash in Johnson's pocket certainly constituted a large quantity of cash, especially for an unemployed student.

[15] Johnson would have us consider independently the C.I.'s credibility and the evidence obtained during the search incident to arrest. The task of the issuing judge, though, is to determine whether the totality of the circumstances corroborates the hearsay, which requires a consideration of how the various pieces of information fit together. Here, the cash found on Johnson's person shortly after he left his apartment at least partially corroborates the C.I.'s report that Johnson had been recently dealing drugs out of his apartment. *See U.S. v.*

*Mays*, 593 F.3d 603, 609 (7th Cir. 2010) ("the sizeable sum of cash Mays was carrying when he was arrested … further corroborated the informant's statements that Mays was involved in drug dealing"), *cert. denied*.

[16] We acknowledge that this corroboration is likely too slim to constitute probable cause that cocaine and related contraband would be found in Johnson's apartment. Regardless, we conclude that the good faith exception to the exclusionary rule applies in this case.

[17] Under the good faith exception, illegally obtained evidence is not excluded if law enforcement acted in "objectively reasonable reliance" on what they thought was a valid warrant. *Wright v. State*, 108 N.E.3d 307, 314 (Ind. 2018). The good faith exception, which applies in Indiana and federal jurisprudence, has been codified in Ind. Code § 35-37-4-5. In relevant part, the statute provides for the good faith exception where the challenged evidence was obtained pursuant to "a search warrant that was properly issued upon a determination of probable cause by a neutral and detached magistrate, that is free from obvious defects other than nondeliberate errors made in its preparation, and that was reasonably believed by the law enforcement officer to be valid". I.C. § 35-37-4-5(b)(1)(A).

[18] "The exclusionary rule is designed to deter police misconduct, and in many cases there is no police illegality to deter." *Hensley*, 778 N.E.2d at 489 (citing *U.S. v. Leon*, 468 U.S. 897, 920-21 (1984)). Although the magistrate or judge is responsible for determining whether an officer's allegations establish probable

cause, an officer's reliance on this judicial probable-cause determination must be objectively reasonable. *Id*. Under this objective standard, police officers are required to have a reasonable knowledge of what the law prohibits, but "imposing on officers the obligation to second guess a magistrate's decision in all but the most obvious instances of an affidavit lacking an indicia of probable cause is not a burden the law anticipates." *Jackson v. State*, 908 N.E.2d 1140, 1144 (Ind. 2009).

[19]     In this case, Johnson does not argue that false information was provided in the warrant, that the warrant was facially defective, or that the issuing judge was not detached and neutral. Thus, suppression is appropriate here only if the affidavit was "so lacking in indicia of probable cause as to render an official belief in the existence of the warrant unreasonable." *Smith v. State*, 982 N.E.2d 393, 407 (Ind. Ct. App. 2013), *trans. denied*. As discussed above, although there may not have been sufficient probable cause to support the issuance of the warrant, there was certainly some indicia of probable cause to believe evidence of drug dealing would be found in Johnson's apartment. In other words, there was enough indicia of probable cause for the officers executing the warrant to rely on the warrant in good faith. Accordingly, we affirm the trial court's decision to admit the evidence found as a result of the search warrant.

## 2. Habitual Offender

[20]     Johnson contends that the State failed to present sufficient evidence to support the habitual offender enhancement. As with other sufficiency claims, we do not

reweigh the evidence but rather look at the evidence in the light most favorable to the judgment. *White v. State*, 963 N.E.2d 511, 518 (Ind. 2012).

[21] To prove that Johnson was a habitual offender the State was required to establish beyond a reasonable doubt that he had accumulated two prior unrelated felonies and that at least one of these prior felonies was not a Level 6 felony or a Class D felony. *See* Ind. Code § 35-50-2-8(b). The State alleged Johnson had three prior unrelated felonies and, at trial, introduced into evidence certified conviction records for each prior felony. Based on the documentary evidence, the trial court found that each of the predicate felonies had been proven beyond a reasonable doubt.

[22] On appeal, Johnson does not dispute that the prior felonies, if established by sufficient identity evidence, satisfy the statutory requirements. Additionally, he acknowledges that "[e]ach set of exhibits for each predicate cause number contain the same identifying, biographical information as the charging information and chronological case summary in the instant case." *Appellant's Brief* at 37. Johnson simply argues that the State was required to provide more than just documentary evidence.

[23] It is well established that identity may be proven by circumstantial evidence. *See Staub v. State*, 567 N.E.2d 87, 93 (Ind. 1991). "If the evidence yields logical and reasonable inferences from which the trier of fact may determine it was indeed the defendant who was convicted of felonies twice before, then sufficient

connection has been shown." *Id*. (quoting *Corker v. State*, 455 N.E.2d 319, 321 (Ind. 1983)).

[24] During the habitual offender phase, the State presented Exhibits H-1 and H-2, the charging information and chronological case summary (CCS), respectively, for the instant case. These documents listed Johnson's name, date of birth, social security number, and driver's license number. They also described Johnson as a 6-foot, 225-pound black male.

[25] To establish the prior convictions, the State presented Exhibits H-3 (2009 conviction for Class C felony possession of cocaine), H-4 (2001 conviction for Class D felony resisting law enforcement), and H-5 (2004 conviction for Class D felony possession of marijuana), which included the CCS, charging information, plea agreement, and other related certified records for each prior conviction. These exhibits revealed the same social security number and date of birth for the defendant as that in Exhibits H-1 and H-2. All of the exhibits also provided the same (or virtually the same) physical description and name of the defendant,[2] and all but Exhibit H-4 (which did not list a driver's license number) included the same driver's license number.

[26] This evidence was sufficient to establish that the defendant in each case – the underlying and prior felony cases – was the same individual and that Johnson

---

[2] On one document the defendant's weight was listed as 220 as opposed to 225 pounds, and the defendant's name varied on the documents from Clark D. Johnson to Clark Johnson to Clark Darnell Johnson.

had committed the three prior unrelated felonies as charged. *See Gentry v. State*, 835 N.E.2d 569, 574 (Ind. Ct. App. 2005) ("A reasonable jury could certainly find that the matching names, dates of birth and social security numbers were sufficient to prove that the individual discussed in the documents was the present appellant."); *Lewis v. State*, 769 N.E.2d 243, 246-47 (Ind. Ct. App. 2002) (sufficient evidence found where the State relied solely on the identifying information – social security number and physical description – from the charging informations for the underlying and prior felonies), *trans. denied*.[3] The habitual offender determination was supported by sufficient evidence.

[27] Judgment affirmed.

Najam, J. and Pyle, J., concur.

---

[3] We reject Johnson's invitation to reconsider *Lewis* and *Gentry*. We do not find these cases inconsistent with *Straub*, in which our Supreme Court noted that certified copies of judgments containing the same or similar name as the defendant's may be introduced to prove the prior felonies but are not sufficient alone to identify the defendant as being the same person named in the documents. *Straub*, 567 N.E.2d at 93. Here, the documents contain substantial identifying information other than just the defendant's name.